**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LARRY FOLLMAN, )<br>individually and on behalf of a class, )<br>)<br>        Plaintiff, )<br>)<br>  v. )<br>)<br>VILLAGE SQUIRE, INC., )<br>and DOES 1-10, )<br>)<br>        Defendants. ) | 07 C 3767<br>Judge Kendall<br>Magistrate Judge Cole |

**PLAINTIFF'S RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT**

**I.    INTRODUCTION**

The motion to dismiss filed by defendant Village Squire, Inc. ignores all decisions on point which hold that the statute invoked by plaintiff is clear and unambiguous, ignores Fed.R.Civ.P. 9(b) which expressly provides that state of mind may be alleged generally, and fails to show why plaintiff is not entitled to bring an action based on his allegations. Instead, defendant raises a number of arguments that have nothing to do with the validity of the claims brought by plaintiff. Therefore, its motion to dismiss should be denied.

**II.    THE ALLEGED VIOLATION**

Plaintiff claims that defendant willfully violated the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.* ("FCRA"), as amended by the Fair and Accurate Credit Transactions Act of 2003, P.L. 108-159, 117 Stat. 1952 ("FACTA"). 15 U.S.C. §1681c(g)(1) provides that

> **No person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.**

Plaintiff alleged that "on June 23, 2007, plaintiff received from Village Squire... a computer-generated cash register receipt which displayed plaintiff's card expiration date." (Amended Complaint, ¶19.) This allegation unequivocally states a fact which shows a violation of the FCRA.

1

The purpose of the "truncation requirement" of 15 U.S.C. §1681c(g) is to prevent identity theft or fraudulent use of credit or debit cards. The Federal Trade Commission estimates that over nine million persons each year have their identity assumed by criminals for financial gain, causing losses in excess of $50 billion. One common *modus operandi* of identity thieves is to steal credit card receipts and statements, and then use the information on the receipts to engage in transactions. Identity thieves who do this are known as "carders" and "dumpster divers." This *modus operandi* is more common than the use of sophisticated electronic means to obtain the information. Robin Sidel, "Identity Theft – Unplugged – Despite the High-Tech Threat, When You Get Ripped Off It's Usually Still the Old Way," *Wall Street Journal*, Oct. 5, 2006 at B1 (Exhibit A).

The expiration date is necessary for misuse of the card number. If an identity thief retrieves from a victim's garbage a document that contains the card number but not the expiration date (such as a monthly credit card statement), the information is not usable. However, if the monthly statement is accompanied by a credit card receipt containing the expiration date, the identity thief has all the information needed to commit fraud.

To curb this means of identity theft, Congress prohibited merchants who accept credit cards and debit cards from issuing electronically-generated receipts that display either the expiration date or more than the last five digits of the card number. The law gave merchants who accept credit cards or debit cards up to three years to comply with its requirements, requiring full compliance with its provisions no later than December 4, 2006. 15 U.S.C. §1681c(g)(3). The receipt in this case was printed over six months after this effective date.

### III. STANDARD OF REVIEW

In *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007), the Supreme Court held that

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, [127 S. Ct. 1955, 1964 (2007)] (quoting *Conley v. Gibson*, [355 U.S. 41, 47 (1957)]). In addition, when ruling on

a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp.*, *supra*, [127 S.Ct. at 1964-1965] (citing *Swierkiewicz v. Sorema N. A.*, [534 U.S. 506, 508, n. 1 (2002)] *Neitzke v. Williams*, [490 U.S. 319, 327 (1989)]; *Scheuer v. Rhodes*, [416 U.S. 232, 236 (1974)]).

### IV. THE 15 U.S.C. §1681c(g) TRUNCATION REQUIREMENT IS UNAMBIGUOUS

15 U.S.C. §1681c(g) prohibits a merchant from printing "more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder." This section of FACTA is not ambiguous. *Iosello v. Leiblys*, 2007 U.S. Dist. LEXIS 61630, *9-*10 (N.D.Ill. Aug. 22, 2007) held that

> the plain language of Section 1681c(g) has only one reasonable meaning.... The plain meaning of the statute is that a merchant shall not print more than the last 5 digits of the credit card number upon any receipt *and* a merchant shall not print the expiration date upon any receipt. In other words, a retailer must print no more than five digits of a card number, and a retailer must also remove the expiration date from the credit card receipt. Printing either more than five digits of the credit card number or the expiration date of the credit card violates Section 1681c(g).

Many Courts have found, just as *Iosello* did, that §1681c(g) "expressly prohibits printing more than the last five digits of the credit/debit card numbers and also prohibits printing the card's expiration date." *Pirian v. In-N-Out Burgers*, 2007 U.S. Dist. LEXIS 25384, *8 (C.D.Cal. Apr. 5, 2007). *Pirian* held that the defendant's argument that a credit card's expiration date could be printed, so long as less than five digits of the credit card number appeared on the receipt, relies on "a tortured reading of a statute that is not ambiguous on its face." *Id.*; *accord*, *Korman v. Walking Co.*, 2007 U.S. Dist. LEXIS 63732 (E.D.Pa. Aug. 28, 2007).

Similarly, *Lopez v. Gymboree Corp.*, 2007 U.S. Dist. LEXIS 44461, *10 (N.D.Cal. June 8, 2007) held that §1681c(g)

> is not vague and ambiguous because the plain language of this section has only one reasonable meaning. "No person... shall print more than the last 5 digits of the card number or the expiration date upon any receipt" means that (1) no person shall print more than the last 5 digits of the credit card number upon any receipt and (2) no person shall print the expiration date upon any receipt. Both of defendant's proposed alternative interpretations are illogical and strained.

The frivolousness of defendant's position that plaintiff's reading of the law is "overly technical" is illustrated by the alternate interpretations of 15 U.S.C. §1681c(g) that it offers.

Defendant argues, for example, that the prohibition on printing "more than the last five digits of the card number or the expiration date" in §1681c(g) could reasonably be interpreted as authorizing the merchant to print the entire card number as long as the expiration date is omitted or to print the expiration date as long as only the last five digits of the card number are printed. (Memorandum at 7.) Both of these interpretations were rejected by *Lopez*, *supra*, as "illogical and strained." Further, "no reasonable person would think this was Congress' intent." *Arcilla v. Adidas Promotional Retail Operations, Inc.*, 2007 U.S. Dist. LEXIS 48206, *10 (C.D.Cal. May 3, 2007).

Defendant also claims that §1681c(g) could mean that a merchant must print no more than the last five digits of the card number, and no more than the last five digits of the expiration date. But credit card expiration dates are almost always four digits (*e.g.*, 0907 for September, 2007). Six-digit and eight-digit expiration dates are rare at best. *Aeschbacher v. California Pizza Kitchen*, 2007 U.S.Dist. LEXIS 34852, *9-*11 (C.D.Cal. Apr. 3, 2007). Congress is presumed to have some minimal understanding of the subject about which it is legislating; presumably, most members of Congress, if not all of them, have credit cards and get receipts. It is absurd to construe a statute as prohibiting the printing of more than five digits of the expiration date when expiration dates normally have only four numbers. "To read the 'last 5 digits' as modifying 'the expiration date,' a firm would have to believe that the statute was unconcerned with dates expressed in the 'MM/YY' format." *Arcilla*, 2007 U.S. Dist. LEXIS 48206 at *10-*11. Even in the odd case of a six digit expiration date, defendant's reading would only protect the first digit, which must be either 0 or 1 (since there are 12 months). A statute "protecting" card expiration information in this manner would be nonsensical. *Aeschbacher*, 2007 U.S.Dist. LEXIS 34852 at *10.

Defendant's argument becomes even more ludicrous when one considers the fact that *the*

*receipts given to plaintiff state a four-digit expiration date.*[1] Thus, according to defendant, the prohibition on stating the expiration date on a receipt does not apply to those who merely print a four-digit expiration date, which is the length of the standard expiration date on credit and debit cards, and which was in fact printed on the receipts defendant gave to plaintiff. Such a reading would make this statutory provision meaningless. This Court must not accept this farcical argument.

The only rational reading of the statute is that merchants may not print any part of the expiration date and may not print more than five digits of the card number, and the digits printed must be the last ones. That is the position of the Federal Trade Commission, which reminded businesses to conform their receipts to the new law, as follows:

> According to the federal Fair and Accurate Credit Transaction Act (FACTA), the electronically printed credit and debit card receipts you give your customers must shorten—or truncate—the account information. You may include no more than the last five digits of the card number, and you must delete the card's expiration date. For example, a receipt that truncates the credit card number and deletes the expiration date could look like this:
>
> ACCT:\*\*\*\*\*\*\*\*\*\*\*12345
> EXP: \*\*\*\* [2]

"FTC Reminds Businesses Law Requires Them to Truncate Credit Card Data on Receipts," May 30, 2007 (Exhibit B). It is also the explanation provided to Congress. 149 Cong Rec. H 8122, at H 8130 (Sept. 10, 2003) ("prohibit retailers from printing the expiration date and more than the last five digits of a consumer's credit or debt card number on electronic receipts"). Courts considering this issue have also adopted this interpretation; the "plain meaning of §1681c(g) is that a retailer may not print more than the last five digits of the credit card number, and may not print the expiration date." *Aeschbacher*, 2007 U.S.Dist. LEXIS 34852 at *10-11.

---

[1] The receipts given to plaintiff by defendant are in the possession of his counsel, and will be produced to this Court for its inspection immediately upon its request.

[2] The FTC assumes a four-digit expiration date. Its direction to merchants regarding compliance with FACTA shows that defendant's belief that the last *five* numbers of the date may be disclosed is a complete fantasy.

5

*Accord*, *Iosello*, *Pirian*, *Lopez*, and *Arcilla*, *supra*; *Blanco v. El Pollo Loco, Inc.*, 2007 U.S.Dist. LEXIS 31231, *5-*6 (C.D.Cal. Apr. 3, 2007); *Ehrheart v. Lifetime Brands, Inc.*, 2007 U.S. Dist. LEXIS 56763 (E.D.Pa. July 17, 2007).

Most critically, it is what the card issuers told merchants to do. Rules provided to merchants by Visa stated exactly what needed to be done, complete with a diagram of a sample receipt:

> Visa requires that all new electronic POS [point-of-sale] terminals provide account number truncation on transaction receipts. This means that only the last four digits of an account number should be printed on the customer's copy of the receipt.
>
> In addition, the expiration date should not appear at all. Existing POS terminals must comply with these requirements by July 1, 2006. To ensure your POS terminals are properly set up for account number truncation, contact your merchant bank. (Exhibit C at 62.)

Defendant's claim that the statute is "vague," when defendant is party to a contract which contains a diagramed picture of a receipt showing exactly what information had to be suppressed, is astounding. No merchant who desired to comply with the statute, and who was contractually obligated to comply as defendant was here (Amended Complaint, ¶¶39-41) could legitimately misunderstand what is required.

That the truncation requirement was readily understandable is demonstrated by the fact that the merchant community had no difficulty comprehending and complying with it. Plaintiff alleges that the overwhelming majority of retailers eliminated the entire expiration date and all but the last four or five digits of the card number. (Amended Complaint, ¶73; see *Id*., ¶¶36, 43-59 (publicization of standards by various national and state organizations).)

Defendant's suggestion that the absence of the word "either" from §1681c(g) is a "grammatical error," and that the statute should have said "[A] and [B]" is not well taken. (Memorandum at 12.) Prohibitions on conduct often state that "no person shall do [A] or [B]." This means that "no person shall do [A]," and that "no person shall do [B]." For example, the Fifth Amendment states that "No person shall... be deprived of life, liberty or property without

6

due process of law." This means that no person shall be deprived of life without due process, no person shall be deprived of liberty without due process, and no person shall be deprived of property without due process. One of the three is sufficient for a violation. On the other hand, if a statute says "no person shall do [A] and [B]," the normal meaning is that both act [A] and act [B] must be performed before there is a violation.

Defendant claims that, because the expiration date portion of §1681c(g) was not mentioned in (1) a press release provided by the White House upon the President's signature of FACTA, (2) another news release provided by the FTC, and (3) a piece of testimony at a Congressional hearing, no one could have known that the expiration date requirement was in the statute. (Memorandum at 8.) This would turn principles of statutory interpretation on their heads. A statute which is passed by both Houses of Congress and signed by the President cannot be deemed to be an accident, which need not be obeyed, simply because it is not mentioned in a brief public statement which summarizes other important provisions. People who want to comply with a law do not rely on such cursory remarks.

*Iosello*, 2007 U.S. Dist. LEXIS 61630 at *11, held that

> Congress enacted FACTA with the intent of helping to prevent the possibility of thieves stealing the identity of another by obtaining one's credit card number and the expiration date of that credit card. Businesses generally require one's credit card number and the expiration date of that credit card to transact business. Access to both the credit card number and the expiration date of that credit card makes it easier for a thief to commit identity theft. The existence of a law prohibiting the printing of more than the last five digits of the credit card number makes it difficult for a thief to obtain the victim's credit card number. The existence of a law prohibiting the printing of the expiration date of a credit card makes it even more difficult to commit identity theft.

Defendant's argument runs counter to the letter and spirit of §1681c(g). This Court should follow *Iosello* and reject defendant's claims that the statute is vague and confusing.

V.  **INTENT MAY BE AVERRED GENERALLY; THE AMENDED COMPLAINT MORE THAN COMPLIES WITH THIS REQUIREMENT**

Defendant claims that the plaintiff "has pled bare conclusory allegations of 'willful' violations of Section 1681c(g)...." (Memorandum at 5.) This is not true; the complaint includes

the following allegations which, if shown, demonstrate recklessness:

- FACTA was enacted in 2003 and gave merchants who accept credit card and/or debit cards up to three years to comply with its requirements, requiring compliance for all machines no later than December 4, 2006 (Amended Complaint, ¶33);

- "defendant knew or should have known of the truncation requirement" (*Id*., ¶31);

- credit card companies and businesses that sell credit card readers and similar equipment "informed defendant about FACTA, including its specific requirements concerning the truncation of credit card and debit card numbers and prohibition on the printing of expiration dates, and defendant's need to comply with the same" (*Id*., ¶35);

- the requirement was "widely publicized" among retailers, with press releases and new policies on truncation of credit card information being disseminated throughout the industry for years by credit card companies, as well as national and state associations of merchants (*Id*., ¶¶36-59);

- credit card companies such as Visa proceeded "to require compliance with FACTA by contract, in advance of FACTA's mandatory compliance date" (*Id*., ¶¶39-42);

- "most of defendant's business peers and competitors readily brought their credit card and debit card receipt printing process into compliance with FACTA by programming their card machines and devices to comply with the truncation requirement" (*Id*., ¶73); and

- notwithstanding the fact that defendant could have done likewise, it willfully disregarded FACTA's requirements and continued to use cash registers or other machines or devices that print receipts in violation of FACTA (*Id*., ¶¶73-75).

Allegations identical to, or even less than, those in the present case have repeatedly been found sufficient. *Iosello, Pirian, Lopez, Arcilla, Aeschbacher* and *Blanco, supra*; *Clark v. Marshalls of MA, Inc.*, 2007 U.S.Dist. LEXIS 33492 (C.D.Cal. March 14, 2007).

In any event, Fed.R.Civ.P. 9(b) expressly provides that "malice, intent, knowledge, and other condition of mind of a person may be averred generally." Nothing in *Bell Atlantic* purports to require anything more. Only two weeks after the *Bell Atlantic* decision, the Supreme Court in *Erickson*, 127 S.Ct. at 2200, reiterated that notice pleading applies in federal court:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the... claim is and the grounds upon which it rests.'" [*Bell Atlantic*, 127 S. Ct. at 1964].

*Erickson* held the following was sufficient: "The complaint stated that [a doctor's] decision to remove petitioner from his prescribed hepatitis C medication was 'endangering [his] life'.... It alleged this medication was withheld 'shortly after' petitioner had commenced a treatment program that would take one year, that he was 'still in need of treatment for this disease,' and that the prison officials were in the meantime refusing to provide treatment.... This alone was enough to satisfy Rule 8(a)(2)." *Erickson*, 127 S.Ct. at 2200.

*Equal Employment Opportunity Commission v. Concentra Health Services, Inc.*, ____ F.3d ____, 2007 U.S. App. LEXIS 18487 (7th Cir. Aug. 3, 2007), held that it was "doubtful" that "*Bell Atlantic* changed the level of detail required by notice pleading." *Concentra*, 2007 U.S. App. LEXIS 18487 at *26 n.4. The Court specifically held that *Bell Atlantic* does not eliminate notice pleading. *Id* at *10 n.1. It is necessary only to state "easily provided, clearly important" facts as allegations in a complaint. *Id.* at *24. Nor was Fed.R.Civ.P. 9(b)—which provides that "intent... may be averred generally"—eliminated by *Bell Atlantic*. For example, in *Concentra*, the Court found that a complaint which alleges that "I was turned down for a job for a reason forbidden by Title VII" would be inadequate, while an allegation that "I was turned down for a job because of my race" would be sufficient—the latter statement represents a general statement of intent acceptable under Rule 9(b). *Id*. at *22-*25. A plaintiff specifically does not have to know, and allege, "every factual detail supporting [his] right; requiring the plaintiff to plead those unknown details before discovery would improperly deny the plaintiff the opportunity to prove [his] claim." *Id*. at *16.[3] See *Ehrheart*, *supra* (allegations virtually identical to those made here are sufficient under *Bell Atlantic*).

Plaintiff specifically alleges that the August 12, 2006 edition of "Rules for Visa

---

[3] Indeed, plaintiff—and consumers generally—are not privy to all facts known by a retail business, as they are not employed by that business. Requiring a consumer to state an all-encompassing knowledge of defendant's activities in his complaint before being able to state a claim on which relief could be granted would essentially destroy consumers' right to recover damages under any lawsuit brought under a consumer protection statute.

Merchants," which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all." Visa required complete compliance with this requirement by July 1, 2006—five months ahead of the statutory deadline. (Amended Complaint, ¶40.) In fact, the cited Visa Rules actually contain a picture of what information had to be deleted from the receipt. (Exhibit C.)

It is utterly inconceivable that any retailer looking at the picture provided in the Visa Rules could misunderstand what was required. Plaintiff alleges that defendant is a party to the Visa contract. The allegations set forth go far beyond the minimum requirement.

In its rush to concoct feeble arguments, defendant stumbles over itself by arguing that "its actions are consistent with a reasonable interpretation of the statute." (Memorandum at 9.) If defendant was interpreting the statute, it knew of it. Defendant's arguments are a little like those of a murderer who claims that he has an alibi, but that if he was at the scene, he acted in self-defense. Neither claim has any credibility.

## VI.    DEFENDANT MISREPRESENTS *SAFECO*

Defendant grossly misrepresents the recent Supreme Court decision in *Safeco Insurance Co. of America v. Burr*, 127 S.Ct. 2001 (2007). What *Safeco* requires is a showing that a violation of the FCRA "is not only a violation under a reasonable reading of the statute, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 127 S.Ct. at 2215. *Safeco* does not require that plaintiff, at the pleading stage, "establish knowledge or understanding of the requirements of [15 U.S.C. §1681c(g)] on the part of Village Squire." (Memorandum at 11.)

If defendant knew what the truncation requirement of 15 U.S.C. §1681c(g) required, or knew that such a requirement existed—as plaintiff has properly alleged—then defendant's alleged violation of the law was, at least, reckless. Furthermore, *Safeco* specifically held that a reckless violation exists where the reading of the statute is unreasonable. *Safeco* at 2215. The

readings of the statute suggested by defendant are totally unreasonable, as a number of Courts, the FTC, Visa and millions of merchants have correctly found. Here, defendant knew the legal obligation. Yet its receipts contained the expiration date.

*Safeco* relied on the *Second Restatement of Torts*, §500, which found that a person acts recklessly when he "does an act or intentionally fails to do an act which it is his duty to the other to do, *knowing or having reason to know* of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." *Id*. (emphasis added). Thus, recklessness occurs when someone either (1) knows what should be done but fails to do it or (2) should know, but avoids learning about a duty and violates that duty. *Vigortone Ag Products v. AG Products*, 316 F.3d 641, 645 (7th Cir. 2002) (recklessness exists where someone was not "careless but, worse... closed his eyes to a known or obvious risk")); *Desnick v. American Broadcasting Cos.*, 233 F.3d 514, 517-518 (7th Cir. 2000) (reference to "ostrich defense" or "willful blindness"). As such, *Safeco* relied on *Farmer v. Brennan*, 511 U.S. 825, 836 (1994) for the proposition that recklessness includes "action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Safeco* at 2215.

The facts alleged show that defendant knew, or should have known, that the receipts that it was producing did not comply with the law. Thus, plaintiff can sustain a claim that defendant recklessly, or willfully, violated the FCRA.

Allegations made "on information and belief" are sufficient to sustain a claim. The Seventh Circuit has long held that, "where pleadings concern matters peculiarly within the knowledge of the defendants, conclusory pleading on 'information and belief' should be liberally viewed." *Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005) (quoting *Tankersley v. Albright*, 514 F.2d 956, 964 n.16 (7th Cir. 1975)). Plaintiff here has alleged facts with sufficient specificity to state a claim on which he can obtain relief.

### VII. NO ACTUAL DAMAGES ARE REQUIRED TO SUSTAIN A CLAIM

In a continued attempt to denigrate plaintiff with irrelevant arguments, defendant repeatedly whines that plaintiff, and any other consumer who sues on this violation, has no actual damages, and that damages could be "catastrophic" or "excessive." (Memorandum at 2, 3, 5, 6, 11-13.) This concern was addressed in full by *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006). The Seventh Circuit held that "individual losses, if any, are likely to be small—*a modest concern about privacy, a slight chance that information would leak out and lead to identity theft*. That actual loss is small and hard to quantify is why statutes such as the Fair Credit Reporting Act provide for modest damages without proof of injury." *Murray*, 434 F.3d at 953 (emphasis added). Furthermore, a Court has the inherent ability to control statutory damages that are excessive or would violate the right to due process. Damages "that would be unconstitutionally excessive may be reduced, see *State Farm Mutual Automobile Insurance Co. v. Campbell*, [538 U.S. 408 (2003)], but constitutional limits are best applied after a class has been certified." *Id*.[4]

The Congress may "enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute." *White v. Arlen Realty & Development Corp.*, 520 F.2d 645, 649 (4th Cir. 1975); see *Alger v. Chicago*, 741 F.Supp. 617, 624 (N.D.Ill. 1990) (citing *White*, holding that standing exists where "the legislature intended to create some procedural 'right' worthy of judicial protection and that they are the intended

---

[4] The repetition of this mantra is accompanied by defendant's complaints about the number of other cases filed by consumers nationwide, which state the same Fair Credit Reporting Act receipt redaction claim as here. (Memorandum at 1-2, 7.) This argument is totally irrelevant. *GMAC Mortgage*, 434 F.3d at 954, found that the other cases filed by one person, or one counsel, were irrelevant. Similarly, the number of cases filed alleging one particular violation of the law is also irrelevant. There are no decisions "supporting the proposition that someone whose rights have been violated by 50 different persons may sue only a subset of the offenders." *Id*. The only purpose in bring up either of these arguments is to attempt to unfairly prejudice plaintiff. Once the Court recognizes that there are millions of merchants who take credit cards, the fact that a handful do not comply shows that defendant's argument is groundless.

beneficiaries of that 'right').

All of this is a question for another day, when the amount of damages is considered. Defendant's raising of the question here does it no good, for plaintiff has adequately pled that defendant failed to comply with 15 U.S.C. §1681c(g), and that its failure was reckless or willful.

**VIII. A PRIVATE RIGHT OF ACTION EXISTS FOR §1681c(g) VIOLATIONS**

15 U.S.C. §1681n(a) provides that

**Any person who willfully fails to comply with any requirement imposed under this title [15 USC §1681 *et seq.*] with respect to any consumer is liable to that consumer in an amount equal to the sum of—**

**(1)**

**(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $ 100 and not more than $ 1,000....**

Defendant is a "person" under the FCRA. 15 U.S.C. §1681a(b). Plaintiff, a natural person, is a "consumer." 15 U.S.C. §1681a(c). The truncation requirement is "any requirement imposed under this title." Defendant's noncompliance occurred in a transaction with a consumer. Although several of the new requirements added by FACTA were expressly made not privately enforceable (see 15 U.S.C. §§1681g(e)(6), 1681m(h)(8), 1681s-2(c), *Perry v. First Nat'l Bank*, 459 F.3d 816 (7th Cir. 2006), the truncation requirement is not one of these.

Statutory construction normally begins and ends with the plain language of the statute. "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-254 (1992). Under the plain language of the FCRA, plaintiff has a private right of action.

Defendant cites to no case supporting the proposition that there is no private right of action for §1681c(g) claims. Indeed, every decision to address the issue has held that there is a private right of action for violation of the "truncation" requirement. In *Eskandari v. IKEA U.S., Inc.*, 2007 U.S.Dist. LEXIS 23007, *3 (C.D.Cal. Mar. 12, 2007), the court rejected the same argument made by defendant here, holding "that with these words [15 U.S.C. §1681n] Congress

13

created a private right of action for consumers cannot be doubted." Similarly, in *Clark*, *supra*, 2007 U.S.Dist. LEXIS 33492 at *4, the court held that, "under the clear language of the FACTA, this is a violation" and a complaint alleging such a violation states a claim. *Aeschbacher*, *supra*, 2007 U.S. Dist. LEXIS 34852 at *2-3 (C.D.Cal., Apr. 4, 2007) held that

> §1681n states that "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer" for the amounts specified in §1681n's subsections. Defendant asserts repeatedly that the Court must not find a private right of action created under §1681n generally, but must focus on "the interaction between the liability provision, Section 1681n, and the underlying statute being violated".... But the interaction between the statutes is clear based on their plain language: §1681n provides a private right of action for violations of §1681c(g). Defendant clouds the issue with references to Nelson v. Chase Manhattan Mortgage Corp, 282 F.3d 1057 (9th Cir. 2002), but in that case the underlying statute being violated contained an explicit exception to §1681n's general liability provisions. The exceptions were provided in §§1681s-2(c) and (d), and applied only for violations of § 1681s. The Nelson Court put it as plainly as possible: "There would be no doubt that a consumer could sue for their violations under sections 1681n & o if it were not for §§1681s-2(c) and (d)." Nelson, 282 F.3d at 1059. Defendant has not suggested that §§1681s-2(c) and (d), or any other such exceptions, apply to violations of §1681c(g). The language of §1681n is clear and there are no statutory exceptions which apply in this case. As a result, the plain language of the statute provides for a private right of action for violations of §1681c(g).

*Accord, Pirian*, *supra*, 2007 U.S. Dist. LEXIS 25384 at *12-13; *Leowardy v. Oakley, Inc.*, 2007 U.S.Dist. LEXIS 31229, *3 (C.D.Cal. Apr. 10, 2007).

Defendant argues that the prohibition in §1681c(g) refers to "cardholder" (including both natural persons and corporations) whereas the civil remedies section refers to "consumer" (natural persons only). (Memorandum at 4.) Consumers have a right to sue under 15 U.S.C. §1681n. If a corporation receives a receipt, it is unable to sue. However, Mr. Follman is not a corporation, but a natural person who obtained a receipt in the course of an otherwise normal consumer transaction. He therefore may seek relief in this Court under §1681n.

The FCRA only allows individuals to sue if the violation is willful or if there are actual damages. The FCRA and many other statutes have defenses based on good faith and the existence of reasonable procedures to prevent violations, resulting in some violations of the substantive requirements going unredressed. In any event, even cards issued for business

purposes are normally issued to a specific individual, so that the actual difference in scope appears to be small.

Many substantive FCRA provisions for which there clearly exist private rights of action do not refer to a "consumer." For example, the most basic prohibition, §1681b, which defines the permissible purposes for which a "consumer report" may be furnished by a "consumer reporting agency," does not expressly impose requirements "with respect to [a] consumer." It is nevertheless clear that a private action may be maintained by a "consumer" pursuant to §§1681n and 1681o for a violation of §1681b. *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006).

**IX. CONCLUSION**

For the reasons stated, the Court should deny defendant's motion to dismiss.

                                Respectfully submitted,

                                /s/ Thomas E. Soule
                                Thomas E. Soule

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Thomas E. Soule
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

**CERTIFICATE OF SERVICE**

  I, Thomas E. Soule, hereby certify that on September 26, 2007 a copy of the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS** was filed electronically, and that a copy of the same was sent to the following individuals, by operation of the Court's electronic filing system:

Robert T. Shannon (rshannon@hinshawlaw.com)
V. Brette Besinger (bbensinger@hinshawlaw.com)

                /s/ Thomas E. Soule
                Thomas E. Soule